[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs in this case are the owners of a single-family residence in the Town of Woodbridge. A contract of sale was entered into on November 13, 1992 to purchase 34 Milan Road (See Exh. F). Both plaintiffs are professionals. Eileen C. Stern (hereinafter "Stern") is a nurse, and Benson A. Snaider is an CT Page 6701 attorney (hereinafter "Snaider"), specializing in real estate law with an extensive practice in Connecticut. The residence provided for a purchase price of $405,000 which had been negotiated from the asking price: The seller of the property was an attorney now deceased and his wife. The terms of the sales agreement provided for a $1,000 deposit with the contract and $36,500 by an additional deposit, when financing was approved, all funds to be held by seller's broker in an interest bearing account. No challenge was made that the plaintiffs did not meet this contingency. The contract of sale further provided for a physical inspection contingency: a. Inspection period after contract — 20 days; b. Notification period after inspection period of 4 days.
A closing date of February 8, 1993 was called for by contract.
The condition of the premises recited that the seller had made no representations or promises and the buyer had the right for a final inspection during a 48-hour period (See Addendum to para. 8 attached to Exh F). Snaider made the arrangements with the defendant Harvey Edelstein (hereinafter "Edelstein") to make his inspection. At the time of trial the defendant Edelstein waived the requirement to pierce the corporate veil and assumed personal liability, if any, found by the court. Snaider testified that he was informed by Edelstein that it was a fantastic house. Edelstein pointed out some window problems. Edelstein pointed out stains in the living room near the fireplace. Snaider described Edelstein's feelings that he "gushed over the house" after his inspection. Edelstein provided his written report (Exh. G) which provides, inter alia, the following pertinent material:
II. EXECUTIVE SUMMARY
 34 Milan Road, Woodbridge is a well constructed and well maintained Contemporary Ranch style one family home, originally built approximately 24 years ago. The following major systems: roof, electrical, plumbing, well, private septic, hearing and hot water are satisfactory, except where otherwise noted. There are no evident major structural defects, and I would expect none to occur if the regular maintenance and repairs outlined below are conducted in a timely manner.
 There some items of repair and maintenance which should be attended to as soon as possible in order to protect the CT Page 6702 building and it's occupants, as follows:
 1. There are signs of minor staining in the underside of the roof. There is evidence of deterioration in the cedar shingles and peak as well as possible leaking in the roof in several areas. This condition is indicative of a need for regular maintenance and repairs in the roofing system to prevent further damage. See Roof section for specific recommendations.
 2. There is dry rot deterioration in the window frames and siding. See Siding section for specific recommendations.
 3. There is evidence of Wood Destroying Insects. See the section on Termites and other Wood Destroying Insects for recommendations.
 4. There are several broken seals in the thermopane windows. See Window section for specific recommendations.
 There are no major items requiring your immediate attention. There are some items of basic maintenance and repair which should be attended to in order to protect your future investment. Detailed analyses and recommendations are contained in each specific section of the following diagnosis report.
 E. Roof
 As indicated in the EXECUTIVE SUMMARY "There are signs of minor staining in the underside of the roof. There is evidence of deterioration in the cedar shingles and peak as well as possible leaking in the roof in several areas. This condition is indicative of a need for regular maintenance and repairs in the roofing system to prevent further damage."
 There are signs of staining and possible leaking in the ceiling of the right front bedroom and in the eaves of this area. There is staining in the ceiling light fixture in the alcove area above the family room.
 There are several areas where deterioration in the cedar shingle has progressed to the point where replacement is necessary. There is significant rot in the peak boards and at the junctions of the roof section. I recommend that the deteriorated areas be replaced. I also recommend that you CT Page 6703 have the entire roof power washed, vacuumed and oiled as soon as possible and very four to five years thereafter, as a matter of maintenance.
 There were no other indications of leakage or staining in the ceiling at the time of the inspection. Nevertheless, I recommend that you apply roofing cement at the junction of the roof section, around the chimney base, vents and waste pipe stacks to prevent premature leaking. This should be done once every two to three years as a matter of regular maintenance.
 VIII. FIVE YEAR REPAIR AND MAINTENANCE SCHEDULE
 22. Have the deteriorated areas in the cedar roofing shingles and peak boards replaced.
 23. Have the entire roof power washed, vacuumed and oiled as soon as possible and every four to five years thereafter.
 24. Apply roofing cement at the junction of the roof section, around the chimney base, vents and waste pipe stacks.
The plaintiffs' amended complaint dated October 18, 1993 seeks money damages against the defendants. At trial Edelstein accepted individual liability sought by way of the Second Count.
The First Count alleges that Edelstein failed to give notice that the entire roof had deteriorated beyond the point where it could be repaired and the entire roof needed replacement rather than several areas. (See para. 7 of the Fist Count). The plaintiffs further allege that in reliance on Edelstein's report they did not exercise their option to give notice of that condition (Roof Replacement) to the seller.
The plaintiffs further allege because the report failed to provide that the roof had deteriorated to the point where it needed replacement they were not able to abrogate the contract or to renegotiate the contract for the cost of replacing the roof. The plaintiffs allege that after moving into the premises the plaintiffs discovered that the roof could not be repaired and maintained in accordance with the defendant's inspection report. The plaintiffs assert that failure to give adequate notice or warning as to the true condition of the roof constitutes negligence on the part of the defendant in one or more of the CT Page 6704 following ways: (a) he failed to properly inspect the roof; (b) he failed to take due care to test and evaluate the condition of the roof; and (c) that the house inspector did not exhibit the degree of care which a residential building inspector should have exhibited under the circumstances.
The plaintiffs allege as a result of the negligence aforesaid the plaintiffs have been damaged.
The Third Count states that the inspection was negligently performed and that the report failed to warn the entire roof needed to be replaced.
Stern never moved into the premises after the closing and failed to testify as to the condition of the roof since that date.
Snaider, however, has lived on the premises since moving into the house in April 1993 and for almost four years has not made any repairs as outlined by Edelstein. Snaider testified to an incident of a leak in the roof while sleeping. No repairs have been made or evidence that there have been any roofing emergency repairs.
The defendants' Revised Special Defenses assert first that the plaintiffs' negligence was greater or equal to Edelstein's in one or more ways by not reading the report, in that they did not follow the steps recommended by Edelstein, and in that they did not retain the services of a roofing company to inspect the roof and provide the costs of repair to the roof. The Second Special Defense asserts that the plaintiffs had the right to renegotiate the price or rescind.
Snaider had never contracted with Edelstein to give him costs of repairs and certainly under such circumstances had no way to attempt to renegotiate with the seller. Edelstein testified many roofers would have given several different prices. Snaider never made any inquiries as to costs of repair before the times set out in the contract of sale. Snaider only offers as an explanation that he relied on the report that stated no major defects were found. The language of the report however says no evident majorstructural defects were noted. (Emphasis added). The contract of sale provided for a final inspection of 48 hours before the closing. The Buyers, plaintiffs, had an absolute right to rescind the contract if they were not satisfied with the condition of the CT Page 6705 house.
The parties presented conflicting evidence of what parts of the roof had to be replaced. The roof had been put on at different times when additions to the main house had been made. The plaintiffs only asserted that the integrity of the roof required total replacement at a cost of $22,000 for which they seek reimbursement. The costs of repair produced in evidence was an estimates of $3,000 and $9,000. The latter being what work Edelstein had recommended to preserve the roof.
The defendant argues that the plaintiffs are distorting the plain meaning of the report by separating the context of the report. The executive summary must be read in its entire context with the entire report with all references.
The parties each presented the reports of their experts in his case and their testimony later to be discussed. Stern only testified to her experience with Edelstein when the inspection was made. She stated it was dusk and that she had not been told that the roof was leaking or sections had to be replaced. She did not testify as to her impressions or that she had read the inspection report. The court concludes that Snaider dealt with the inspection. On February 1, 1993 Snaider wrote a letter to his expert Willnaur suggesting to him that there was a roof problem. (Exh. 1). In that letter he suggests that Willnaur meet him on February 8, 1993 to inspect the roof. He further indicated that the closing of title was to take place February 3, 1993. On the same date Snaider wrote to Edelstein in which he stated that on January 16, 1993 he and Stern inspected the roof with Brian Hayes of Connecticut Wood Shingle Roofs. He informed Edelstein of the deterioration of the main portion of the house's roof.
Edelstein responded (Exh. I) referring to the section of his report that he had called to the plaintiffs' attention the need for replacements of sections of the roof and that they were put on notice by his report that work on the roof was needed and that during the inspection period that the plaintiffs had an opportunity to go over the report with the Sellers. Edelstein asserts that the plaintiffs should have had a roofer inspect the costs of repairs if it was a concern of the plaintiffs in the purchase of the house. A reading of the report would suggest that an experienced lawyer and buyer would have gotten estimates if it was going to be a negotiating chip in the purchase. CT Page 6706
Edelstein testified he was never engaged to get prices for repairs or that such a feature is customarily placed in home inspection reports. Snaider asserts that he was misled by the report and did not take steps to terminate the agreement. From all the evidence adduced at trial the condition of the roof and the extent of the costs either for repairs and or replacement should have and could have been addressed in accordance with the terms of the contract of sale. The only testimony offered as regards the effect of the roof problem was given by Snaider who stated the seller, an attorney, now deceased stated that he pay the price negotiated or he would lose his deposit. Certainly a lawyer with the knowledge and experience of Snaider could raise serious questions as to that conclusion. Edelstein in his report suggested that Snaider contact him if he had any questions.
The expert of the defendant who made an inspection on December 17, 1994 stated in his report. (Exh. 2).
 "There was no indication of any present water leakage through the roof. There was no staining on any of the interior ceilings, and no indication of any water infiltration into the attic. Clearly the shingles are performing properly as the roof is not leaking; it had been raining just prior to the inspection.
 With proper maintenance and the mentioned repairs the roof should continue to be viable for some time. The shingles on the two additions in the rear were considerably newer than the remainder of the roof and in very good condition. There was evidence of a past roof repair beneath the chimney in the rear."
The Willnaur report assets that the maintenance program would be futile and only if done on a maintenance program before might have extended the life of the roof beyond its expected life of20-25 years. Snaider as well as the defendant knew the already used up life of the roof on the main house.
The expert of the defendant (hereinafter Goodridge) opined that the roof did not need to be replaced in 1992. He testified that he did not see signs of recent painting although he noted some cosmetic work had been done, but that he saw no signs of a great deal of leakage. Goodridge observed that no maintenance of the roof had been done to the roof for 2 to 3 years. Goodridge further testified that the type of roof in question had life span CT Page 6707 depending upon the degree of maintenance for 20-60 years, depending also on location and other weather conditions. Goodridge testified this roof was of a high quality material and that the roof over the additions were in excellent condition. Snaider nonetheless had submitted only estimates as to an entire roof replacement. Goodridge testified that material over the garage was in bad shape but the needed repair was mainly to the ridge boards (peaks) of the roof. Goodridge testified that only small areas of 3 x 3 feet in spots requiring one or two shingles needed replacement.
Goodridge who was a credible witness stated that a report prepared by him would have been in the substantially same language as that of Edelstein although he goes further to state get a roofer. Goodridge testified that there were standards of care in the home inspection industry in the preparation of reports and that Edelstein did not fall below the standard in the profession.
The defendant finally argues that Snaider failed to act as a reasonably prudent lawyer in reading the report. In this case Snaider was acting pro se but perhaps as an attorney as regards Stern up to the time when it appeared a trial was imminent. The court is not called upon to solve that relationship.
The defendant points out that Snaider read the report timely and that, as he testified, in acting as a lawyer a repair of $1,000 or more is a concern to which he would get cost estimates. Also that he would have contacted the home inspector about the list of recommended repairs. The defendant argues that a reasonably prudent lawyer or person would have obtained estimates for the roof from contractors or further questioned a home inspector about such an item. The defendant argues that the plaintiff Snaider who was acting individually and as an attorney was more negligent than Edelstein concerning the report. The contract did not provide to renegotiate the contract. It called for a take it or leave it price. The price had already been negotiated. Any conditions found by the home inspector was really for the purpose of Snaider and Stern to make up their minds to purchase or to terminate the contract without liability to them. They sought information from a home inspection which alerted them to problems. The plaintiffs should have obtained further information. The inspection report alerted them to the problems. It was for the plaintiffs to evaluate those concerns. CT Page 6708
The plaintiffs indicated that they had budgeted this purchase and an amount had been set up for redecorating although not for the roof.
The court concludes from all the evidence that the report met the standard of care for the industry and that any claimed negligence as to the actual inspection is far outweighed by the negligence of the plaintiffs in this case.
Accordingly, judgment is entered in favor of the defendant as to all remaining counts.
Frank S. Meadow Judge Trial Referee